IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RONALD CLARK, | : | CIVIL ACTION |
|     Petitioner, | : | |
| | : | |
| v. | : | |
| | : | |
| JEFFREY A. BEARD, | : | NO. 10-3164 |
| SECRETARY FOR PA DOC, et al., | : | |
|     Respondents. | : | |

## MEMORANDUM

DAVID R. STRAWBRIDGE
UNITED STATES MAGISTRATE JUDGE                                          June     11, 2015

      While this habeas case was pending before the Court for Report and Recommendation, Petitioner, through his counsel, moved for permission to conduct discovery. (Doc. 41.) He contended that "[d]iscovery [was] necessary in order to enable [him] to prove his allegations of constitutional error, and aid the Court in its review." (Mot. for Disc. at 1.) Respondents filed a Response to the Motion for Discovery (Doc. 45), opposing the requests but offering to facilitate, at Petitioner's expense, a second FBI analysis of the videotape taken from the surveillance system in the store where the homicide occurred.

      As we prepared our Report and Recommendation, we determined that the requested discovery was not warranted. We issued an Order denying the motion on May 29, 2015. (Doc. 47.) Also on that date we filed our Report and Recommendation explaining why we believed that the habeas petition should be denied. (Doc. 48.) We submit this memorandum in support of the order denying Petitioner's discovery motion.

**I.    LEGAL STANDARDS**

      Rule 26(b)(1) provides generally that in civil actions, and "[u]nless otherwise limited by

1

court order":

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense -- including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. All discovery is subject to the limitations imposed by Rule 26(b)(2)(C).

Fed. R. Civ. P. 26(b)(1).[1] Rule 6 of the Rules Governing Section 2254 Cases, however, provides that leave of court is required before discovery may be conducted in habeas actions brought by state prisoners challenging their state convictions, providing in pertinent part: "A judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery." 28 U.S.C. foll. § 2254, Rule 6(a). Thus, unlike other federal civil actions, discovery is available in habeas proceedings not as a matter of course but only if the habeas petitioner shows "good cause" to warrant the court's authorization of the discovery.

The United States Supreme Court explained in *Bracy v. Gramley*, 520 U.S. 899 (1997), that "good cause" has been established when the petitioner has put "specific allegations before the court" giving "reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is … entitled to relief." *Bracy*, 520 U.S. at 908-09. The Court also "emphasize[d]" in *Bracy*, however, that general allegations will not justify discovery in this context. It was not enough in *Bracy*, for example, for the petitioner to show that he had been

---

[1] Rule 12 of the Rules Governing Section 2254 Cases in the United States District Courts provide that "[t]he Federal Rules of Civil Procedures, to the extent that they are not inconsistent with any statutory provisions or these rules, may be applied to a proceeding under these rules."

tried before a judge who was later convicted of taking bribes but that he rather pointed to other evidence that *his* case was one in which the judge was inclined to be dishonest in violation of the petitioner's Fourteenth Amendment Due Process Rights. *See id.* (noting that the petitioner "support[ed] his discovery request by pointing not only to [the judge's] conviction for bribe taking in other cases, but also to additional evidence, discussed above, that lends support to his claim that [the judge] was actually biased *in petitioner's own case*") (emphasis in original).[2] The Court in *Bracy* also noted, however, that "Rule 6(a) makes it clear that the scope and extent of such discovery is a matter confided to the discretion of the District Court." *Id.* at 909.

## II. PETITIONER'S DISCOVERY REQUESTS

We review Petitioner's requests in the order in which he presented them in his motion.

### 1. *Information on how Clark became a suspect*

Clark seeks information from the Commonwealth as to how he became a suspect in the case, which he contends he "is entitled to know," as the only evidence against him came from the testimony of three eyewitnesses to whom he was a stranger and who identified him initially in a photographic array. (Mot. at 4-5.) He suggests that further investigation is warranted because their identifications were, in his view, of "questionable reliability." (*Id.* at 5.) He contends that information as to how he became associated with the homicide investigation impacts upon Claim I of his petition, which related to trial counsel's alleged failure "to reasonably investigate, develop and present evidence to impeach the credibility of the three Commonwealth witnesses who purported to identify Mr. Clark." (Pet'r Mem. [Doc. 20] at 11 (Claim I heading).) He asserts that "[t]rial counsel knew from the first trial that some unknown individuals allegedly

---

[2] There was evidence in *Bracy* that the trial judge "fixed" other murder cases during and around the time of the petitioner's trial. The petitioner contended that the judge therefore had an interest in a conviction in his case "to deflect suspicion that he was taking bribes in other cases[.]" *Bracy*, 520 U.S. at 901.

3

provided his client's name to police, yet he completely failed to follow up on this information." (Mot. at 6.) He contends that this information could have been used to undercut the three "suspect eyewitness identifications in this case and challenge the police investigation into the matter, particularly where no other evidence connected Mr. Clark to the crime." (*Id.*) Petitioner also contends that this information has "implications" under *Brady v. Maryland*, 373 U.S. 83 (1963), in that it can be presumed that the source who initially implicated Clark was not himself or herself credible. Respondents assume that what Petitioner seeks is the police department's investigative file and note that there is good reason for protecting that material from discovery. (Resp. to Mot. at 9.)[3]

We do not believe the circumstances of this case justify discovery of the police investigative file. Clark has not shown that his claim concerning the performance of counsel in impeachment of the eyewitnesses would have been enhanced by knowledge about how Clark's photo came to be included in the array from which all three Commonwealth trial witnesses identified him. Therefore, there is no good cause for this discovery.

2. *Information regarding Sherry Taggart's drug and alcohol abuse*

Clark also contends in his habeas petition that the Commonwealth withheld "certain information pertaining to witness Sherry Taggart that runs afoul of its *Brady* obligations," and requests any information in the possession of the District Attorney's Office or the Philadelphia Police Department concerning Taggart's "drug or alcohol abuse." (Mot. at 6-7.) He contends that "[a]ny information that the Commonwealth possessed regarding Ms. Taggart's impaired

---

[3] Respondents note that the police file might reveal the identity of persons with whom the police spoke, which could prove problematic and deter future witnesses from providing information to police, particularly where this case presented overtones of possible interference with witnesses, as reflected in Taggart's testimony at the PCRA hearing that "someone" had to have helped her write the letter she sent to Clark's mother prior to the second trial.

4

condition" --- presumably at the time she witnessed the shooting --- "is clearly relevant to Mr. Clark's claim that the Commonwealth improperly withheld such information at trial." (*Id.* at 7.)

The problem here is that there is no reason to believe the Commonwealth would have been in possession of any information concerning Taggart's "condition" at the time of the shooting. She does not appear to have been interviewed with other eyewitnesses on the evening of the shooting. Rather, her first contact with police was days later. Petitioner's request is not tailored to any relevant issue at the time of trial, such as her ability to perceive and recall events at the time of the shooting or her competency to testify at trial about what she witnessed. As Clark's request does not seek "relevant information" nor information "reasonably calculated to lead to the discovery of admissible evidence," Fed. R. Civ. Proc. 26(b)(1), this request cannot be authorized.

3. *Information regarding "the dropping" of Taggart's retail theft charges*

Petitioner argues that because Taggart testified that she was "threatened with jail time when she was interviewed by police," "[a]ny information regarding any deal – formal or informal – threat, or promise made" to her "is clearly relevant to the colorable claim raised by Mr. Clark in his habeas petition," (Mot. at 7), that is, his claim of ineffective assistance of trial counsel in failing "to reasonably investigate, develop and present evidence to impeach the credibility of the three Commonwealth witnesses who purported to identify Mr. Clark." (Pet'r Mem. [Doc. 20] at 11 (Claim I heading).) He contends that her PCRA testimony constitutes good cause for this request. He also suggests that during the PCRA litigation the Commonwealth was improperly permitted to make minimal efforts to locate any information in its possession concerning the circumstances under which the 1989 retail theft charges were

5

dropped in 1994. (Mot. at 7 & n.6.)

Petitioner was given an opportunity on PCRA review to develop his claim of ineffective assistance of counsel in Attorney Lorusso's failure to impeach Taggart at retrial based upon the information contained in the Taggart Letter. Taggart was asked about threats made and deals offered by the police and/or prosecutors concerning her outstanding bench warrant. The state court's factual findings on PCRA review in regard to this claim were reasonable in light of the evidence presented in the state court. There is no basis for further discovery concerning these assertions.

4. *All original videotapes from the store surveillance system*

As he did in his petition, Clark argues that "the record strongly suggests there were additional videotapes that should have been provided to counsel and which counsel should have demanded and viewed" besides what Clark suggests was a single videotape that counsel did view prior to trial. (Mot. at 8.) He contends that "[t]here is at the very least a material issue of fact as to the number of videotapes and what the videotapes show, which the state court never resolved." (*Id.* at 8-9.) He proffers the fact that he is not visible in any of the footage of the DVD copy of the surveillance footage that was provided to collateral review counsel in 2011 and that this evidence therefore should have been presented by his trial counsel because it corroborated his defense that he was not present at the scene of the crime. (*Id.*)

As we set out in our Report and Recommendation, the state court determined that Clark had not established a basis on PCRA review to develop this claim further in an evidentiary hearing because his assertions were merely speculative about the existence of additional evidence that counsel failed to review and present. We do not find Clark to have made a

sufficient proffer that that factual finding is erroneous.[4]  Moreover, inasmuch as Respondents provided a copy of the footage and analysis by the FBI, further requests for this discovery are moot.  We find no basis to order Respondents to produce to Petitioner the original videotape.

   5. *Color copies of the photo arrays shown to witnesses*

Clark states that "to date" he "has not seen color copies of the photo arrays shown to the witnesses in this case," and that they are pertinent to his claim that trial counsel was ineffective for failing to properly litigate the suppression of witness identifications, Claim VII of his petition. (Mot. at 9.) We agree with Respondents that Clark's lack of any further explanation of or justification for his request amounts to a failure to show good cause for this discovery.

   6. *The prosecutor's handwritten jury selection notes and "any other documents relating to the exercise of peremptory challenges in this case" (Mot. at 11)*

With respect to his *Batson* claim asserted as Claim VIII of his petition, Clark seeks discovery of the prosecutor's notes from jury selection in this case, which he believes "will assist in identifying the racial makeup of the jury panels and will likely contain evidence of the prosecutor's reasons for her strikes." (Mot. at 10.)

As we noted in our R&R, the state court determined that the defense did not make out a prima facie case of racial discrimination in the Commonwealth's use of peremptory challenges in voir dire. That is the first step of the *Batson* inquiry. We concluded that this finding was not unreasonable under Supreme Court governing law and that counsel therefore could not be deficient for failing to litigate a *Batson* challenge. In light of this determination, there is no

---

[4]  Petitioner proffers that counsel viewed a videotape prior to trial counsel and did not use it. Pursuant to *Strickland*, we must presume that is because the footage counsel viewed was not useful. Petitioner's insistence that the footage *must* have been favorable because the Commonwealth did not use it and that there useful footage *must* have been captured such that a better lawyer could have found a way to use and present is quixotic.

need for discovery concerning the second step of the *Batson* inquiry, which addresses the prosecutor's race-neutral rationale for her strikes. To the extent that Clark believes the prosecutor's notes would have recorded the race of the prospective jurors and thus presumably assist in re-creating the record, we observe that counsel for co-defendant and the trial judge memorialized the composition of the jury and venire members up until that point when counsel for co-defendant made his objections. Therefore, the record already provides information on the circumstances of the prosecutor's use of peremptory challenges at the time of the defense objections. Further discovery of this information is not necessary.

## III.   CONCLUSION

Petitioner contends that he has established good cause for the discovery he requests because "he was impeded in the presentation of his defense by the misconduct of the prosecutor and investigating officers, and the ineffectiveness of his counsel." (Mot. at 4-5.) He believes that "[t]he facts and arguments set forth in the *Petition* cast grave doubt on the reliability of the evidence used to convict Petitioner and undermines the Commonwealth's theory of the case," and that there is reason to believe "that the discovery he is requesting is likely to uncover additional evidence of misconduct of the prosecutor and investigating officers, and trial counsel's ineffectiveness." (Mot. at 11.) We do not agree with Petitioner's characterization of the record as supporting evidence of prosecutorial and/or investigative misconduct nor of constitutionally deficient performance by trial counsel, which is the constitutional issue implicated in virtually all of the habeas issues presented to this Court. We do not accept the notion that a discovery process may be used in a habeas case to probe for additional claims.

For these reasons, we denied Petitioner's motion for discovery.

BY THE COURT:

  /s/ David R. Strawbridge
DAVID R. STRAWBRIDGE
UNITED STATES MAGISTRATE JUDGE