IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RONALD CLARK, | : | |
| | : | |
| Petitioner, | : | CIVIL ACTION NO. 10-3164 |
| | : | |
| v. | : | |
| | : | |
| JOHN E. WETZEL, Commissioner, | : | |
| Pennsylvania Department of Corrections; | : | |
| LOUIS B. FOLINO, Superintendent of the | : | |
| State Correctional Institution at Greene; and | : | |
| MARIROSA LAMAS, Superintendent of | : | |
| the State Correctional Institution at | : | |
| Rockview, | : | |
| | : | |
| Respondents. | : | |

**MEMORANDUM OPINION**

Smith, J.                                                                    September 25, 2023

When a habeas petitioner files a motion seeking relief from the dismissal or denial of their habeas petition pursuant to Federal Rule of Civil Procedure 60(b), a district court must review the motion to determine if it is a "true" Rule 60(b) motion, or if it is actually a second or successive habeas petition for which the petitioner would first need authorization from the Third Circuit Court of Appeals before filing it in this court. Under the applicable precedent from the United States Supreme Court, a "true" Rule 60(b) motion is one that challenges a procedural ruling by the district court that precluded a merits determination of the habeas petition, such as a statute-of-limitations bar, failure to exhaust state remedies, or procedural default. A "true" Rule 60(b) motion is also one that seeks relief by identifying a defect in the integrity of the habeas proceedings, such as if the opposing party committed fraud upon the court. If the court determines that the motion is not a "true" Rule 60(b) motion, the district court must treat the motion as an unauthorized second or successive habeas petition over which the district court lacks subject-matter jurisdiction.

Here, the *pro se* movant is currently serving a life sentence for a murder, and related offenses, committed in Philadelphia in October 1993. He has spent most of the past 30 years challenging the charges against him, his convictions, and his sentence. He spent a portion of that period litigating a petition for a writ of habeas corpus under 28 U.S.C. § 2254 in this court, where he raised six ineffective assistance of counsel claims, an equal protection claim (combined with an ineffective assistance of counsel claim) based on the Commonwealth allegedly improperly striking Black prospective jurors in violation of *Batson v. Kentucky*, 476 U.S. 79 (1986), and a due process violation under *Brady v. Maryland*, 373 U.S. 83 (1963), pertaining to the Commonwealth allegedly failing to disclose certain information about an eyewitness who testified during the trial. The court thoroughly reviewed those claims, with great assistance from the comprehensive report and recommendation crafted by the assigned magistrate judge, and denied them all on the merits in 2015. Although the movant challenged the denial on appeal, the Third Circuit declined to issue a certificate of appealability.

Slightly more than seven years later, the movant filed his first Rule 60(b)(6) motion, based in large part on allegedly newly discovered evidence pertaining to various incidents of misconduct in other criminal cases committed by the two lead detectives who investigated his case. This information led the movant to conduct additional research, during which he discovered an alleged *Brady* violation, based on the Commonwealth failing to turn over evidence of misconduct concerning one of those detectives prior to his trial.

After reviewing this first Rule 60(b)(6) motion, the court concluded that it was not a "true" Rule 60(b) motion insofar as the movant was seeking to assert new claims, instead of challenging a procedural ruling or alleged defect in the integrity of the prior habeas proceedings. As such, the court characterized it as an unauthorized second or successive section 2254 petition over which

2

the court lacked jurisdiction. Instead of dismissing it, the court determined that the interests of justice warranted transferring it to the Third Circuit, which later denied the movant's application for authorization to file a second or successive section 2254 petition.

The movant, incorrectly claiming that he had withdrawn his application for authorization to file a second or successive section 2254 petition, has now returned here with a new Rule 60(b)(6) motion in which he "cured" the defects identified with the prior motion. Despite this assertion, and upon closer examination, the movant is essentially replicating his first Rule 60(b)(6) motion. He argues the same *Brady* claim and identifies the same evidence showing acts of misconduct in other cases committed by the two lead detectives. The only differences in the current motion are that the movant now claims that (1) the Third Circuit's decision in *Dennis v. Secretary, Pennsylvania Department of Corrections*, 834 F.3d 263 (3d Cir. 2016) constitutes a change in controlling precedent applicable to his case and (2) he can demonstrate his actual innocence. These differences are wholly incapable of reforming the instant motion into a true Rule 60(b)(6) motion.

As the famous proverb goes: "When I see a bird that walks like a duck and swims like a duck and quacks like a duck, I call that bird a duck." Here, despite the movant's attempt to contort his habeas claims into a true Rule 60(b) motion by referencing actual innocence and *Dennis*, it relies on the same primary claims as his prior motion that this court construed to be an unauthorized second or successive habeas petition, references most of the same supporting evidence as the prior motion, and asserts an actual innocence claim based on several arguments that this court rejected as part of his habeas action. Thus, as with the prior motion, the instant motion does not challenge a procedural ruling which prohibited a merits analysis in the habeas action (as there is no procedural ruling to challenge) or demonstrate a defect in those habeas proceedings. Accordingly,

the court is once again faced with an unauthorized second or successive habeas petition which, on this occasion, the court will dismiss instead of transferring it to the Third Circuit.

## I.    PROCEDURAL HISTORY

In December 1994, a jury sitting in the Court of Common Pleas of Philadelphia County convicted the *pro se* movant, Ronald Clark ("Clark"), of multiple offenses, including first-degree murder.[1] *See Commonwealth v. Clark*, No. 2142 EDA 2021, 2023 WL 2151613, at *1 (Pa. Super. Feb. 22, 2023). The facts underlying those convictions have been previously set forth as follows:

> At approximately 9:30 p.m. on the evening of October 7, 1993 Aineis Sunn Life and his friend, Kevin Pettiway, were ordering food at the Wayne Junction Deli at 4500 North 20th Street in Philadelphia. While standing in the order line Mr. Sunn Life asked [Clark], who was standing behind him to "back up off me." [Clark] replied "Oh, it's like that," and left the Deli. According to the record there was no previous relationship between Mr. Sunn Life and [Clark]. Kevin Pettiway heard the exchange between Mr. Sunn Life and [Clark].

> [Clark] was observed by Nigel Bell, a man who lived in the vicinity and happened to be a close friend of Mr. Sunn Life, as he exited the Deli. Mr. Bell watched [Clark] walk away from the Deli to a playground where he spoke with the co-defendant, Kevin Dwight. Mr. Bell knew Mr. Dwight and also knew from prior observations that Mr. Dwight always carried a shotgun inside an umbrella. Mr. Bell saw [Clark] whisper into Mr. Dwight's ear, and then observed Mr. Dwight hand [Clark] the umbrella containing the shotgun. [Clark] returned to the Deli at a fast pace.

> Sherry Taggart, who was employed to sweep the parking lot of the Deli, observed [Clark] enter the Deli with the umbrella. Ms. Taggart clearly recalled her observation of [Clark] as it was not raining, thus, she found it strange that he was carrying an umbrella. Mr. Pettiway was standing next to Mr. Sunn Life when [Clark] re-entered the Deli. Mr. Sunn Life was standing at the cash register when [Clark] held the shotgun to the back of his head and asked Mr. Sunn Life "What you got to say now m_____?" [Clark] pulled the trigger and Mr. Sunn Life was declared dead at the scene, the result of a massive shotgun blast to the side of his head.

> Mr. Bell after observing [Clark's] encounter with Mr. Dwight in the playground, and hearing the shotgun blast, immediately entered the Deli. It was at

---

[1] This was actually Clark's retrial. He was first tried before a jury in July 1994, with that trial ending in a mistrial when the jury was unable to reach a unanimous verdict. *See* Resp. to Pet. for Writ of Habeas Corpus at 5, Doc. No. 32.

that point Mr. Bell realized his friend had been shot. Mr. Bell took Mr. Sunn Life's chain from his neck, to return it to his family, before the police arrived. Mr. Bell exited the Deli and confronted Mr. Dwight about the shooting. Mr. Dwight told Mr. Bell, "Don't worry I'll take care of it." The next day a woman Mr. Bell knew as an associate of Mr. Dwight, brought a shotgun to Mr. Bell's home. The ballistics expert testified that a shotgun shell recovered from the scene had been fired from the shotgun delivered to Mr. Bell's home the day after the shooting.

*Commonwealth v. Clark*, 710 A.2d 31, 34–35 (Pa. 1998) (third to last alteration in original) (internal footnote omitted), *abrogated on other grounds by Commonwealth v. Freeman*, 827 A.2d 385 (Pa. 2003).

Clark's case then proceeded to a penalty-phase hearing, after which the jury sentenced him to death. *See id.* Clark appealed from his conviction and death sentence, which was upheld by the Pennsylvania Supreme Court. *See id.* at 43. Although Clark also filed a petition for a writ of certiorari with the United States Supreme Court, the Court denied the petition on April 19, 1999. *See Clark v. Pennsylvania*, 526 U.S. 1070 (1999).

Clark then challenged his convictions and death sentence on state collateral review by filing a petition under Pennsylvania's Post Conviction Relief Act, 42 Pa. C.S. §§ 9541, *et seq.*, on May 17, 1999. *See Commonwealth v. Clark*, 961 A.2d 80, 83 (Pa. 2008). In 2003, the PCRA court granted Clark a new penalty hearing due to his counsel's ineffectiveness in failing to present certain mitigation evidence, and denied his request for a new trial on those charges upon which he was convicted. *See id.* at 83 n.1, 84. Clark appealed from the denial of PCRA relief on his guilt-phase claims to the Pennsylvania Supreme Court. *See id.* On December 17, 2008, the Pennsylvania Supreme Court affirmed the PCRA court's denial of his guilt-phase claims. *See id.* at 83, 96. On August 16, 2011, the PCRA court resentenced Clark to life imprisonment without the possibility of parole on his first-degree murder conviction. *See Clark*, 2023 WL 2151613, at *3. Clark did not appeal from this sentence. *See id.*

In between the Pennsylvania Supreme Court affirming the PCRA court's denial of Clark's PCRA claims pertaining to the guilt phase of his case and the PCRA court resentencing him to life imprisonment, Clark filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254 in this court, which the clerk of court docketed on June 29, 2010. *See* Doc. No. 1. Soon thereafter, Clark filed a motion for the appointment of counsel, which the Honorable Timothy J. Savage granted on August 5, 2010. *See* Doc. Nos. 4, 5. Clark then filed a counseled amended habeas petition on February 9, 2012. *See* Doc. No. 12. This amended habeas petition included the following claims:

1.      Trial counsel was ineffective for failing to reasonably investigate, develop and present evidence to impeach the credibility of the three Commonwealth witnesses that purported to identify Mr. Clark; appellate counsel was ineffective for failing to raise these meritorious issues on direct appeal.

. . .

2.      The Commonwealth violated its obligations under *Brady v. Maryland* by failing to disclose evidence that could have been used to impeach the Commonwealth's key witness.

. . .

3.      The trial court erred in giving a "flight" instruction as to Mr. Clark; trial counsel was ineffective in failing to pursue a curative instruction; and appellate counsel was ineffective for failing to raise this meritorious issue on direct appeal.

. . .

4.      Trial counsel was ineffective for failing to present adequate evidence to support Mr. Clark's alibi defense; appellate counsel was ineffective for failing to raise this meritorious issue on direct appeal . . . .

5.      Trial counsel was ineffective for failing to present the Stop 'N Go videotapes from the night of the shooting; appellate counsel was ineffective for failing to raise this meritorious issue on direct appeal . . . .

6.      The trial court improperly instructed the jury on the meaning of reasonable doubt; trial and appellate counsel were ineffective . . . .

7.   Trial counsel was ineffective for failing to renew his motion to suppress upon learning of the police misconduct during the photo arrays; appellate counsel was ineffective . . . .

8.   The prosecutor used her peremptory challenges in a racially discriminatory manner; Trial and appeal counsel were ineffective . . . .

Am. Pet. for Writ of Habeas Corpus at ECF pp. 2–4, Doc. No. 12 (use of small caps omitted).

Approximately a month after Clark filed the amended habeas petition, Judge Savage referred the case to the Honorable David R. Strawbridge for the preparation of a report and recommendation. *See* Doc. No. 13. While the case was before Judge Strawbridge, Clark filed a supplement to his amended habeas petition, where he claimed that he should be released due to the Commonwealth's failure to provide all the original surveillance videotapes from the crime scene. *See* Suppl. to Am. Pet. for Writ of Habeas Corpus at ECF p. 4, Doc. No. 31. After the amended petition, as supplemented, was fully briefed, this matter was reassigned from Judge Savage's calendar to the undersigned's calendar on April 22, 2014. *See* Doc. No. 46.

On June 1, 2015, Judge Strawbridge issued a comprehensive report recommending that the court deny the amended habeas petition without an evidentiary hearing and decline to issue a certificate of appealability. *See* Doc. No. 48. Regarding his analysis of the claims in the amended petition, Judge Strawbridge determined that the state courts had reasonably adjudicated each claim and as such, Clark claims were meritless, and he was not entitled to habeas relief. *See* R. & R. at 1, Doc. No. 48.

On June 11, 2015, Judge Strawbridge entered a separate memorandum opinion and order addressing a motion for discovery Clark had filed on August 14, 2013. *See* Doc. Nos. 41, 53–54. On August 14, 2015, Clark filed objections to the report and recommendation, and the respondents filed a response to the objections on September 30, 2015. *See* Doc. Nos. 55, 59. On November 18,

7

2015, this court entered an order (1) overruling Clark's objections to Judge Strawbridge's report and recommendation, (2) approving and adopting the report and recommendation, (3) denying the amended habeas petition without an evidentiary hearing, and (4) declining to issue a certificate of appealability. *See* Doc. No. 60.

On December 16, 2015, Clark appealed from the denial of his amended habeas petition to the Third Circuit Court of Appeals. *See* Doc. No. 62. On April 24, 2017, the Third Circuit affirmed the denial of the petition. *See Clark v. Sec'y Pa. Dep't of Corrs.*, 687 F. App'x 152 (3d Cir. 2017). Clark then filed a petition for a writ of certiorari with the United States Supreme Court, which the Court denied on December 11, 2017. *See* Docket, *Clark v. Wetzel,* No. 17-6339 (U.S.), *available at*:    https://www.supremecourt.gov/search.aspx?filename=/docket/docketfiles/html/public/17-6339.html.

After his habeas proceedings had concluded, Clark then returned to the Court of Common Pleas of Philadelphia County by filing a *pro se* second PCRA petition on March 30, 2018. *See Clark*, 2023 WL 2151613, at *1. In this second petition, Clark

> invoke[ed] newly-discovered facts concerning alleged misconduct in an unrelated case by Detective Santiago and Detective Frank Jastrzembski, who also assisted in [Clark's] murder investigation. Essentially, [Clark] pled that he discovered the pertinent allegations of police corruption and prosecutorial misconduct in that unrelated case on February 20, 2018, after reading an article published the preceding day in the Philadelphia Daily News. The article reported on the potential effects of the 2016 exoneration of Anthony Wright and his civil suit against Philadelphia and the eleven police detectives that investigated him. Detective Santiago was identified in the 2018 article and both detectives were named in Mr. Wright's 2016 civil complaint.

*Id.* Although the PCRA court dismissed this second petition without a hearing on September 12, 2019,[2] Clark appealed from the decision to the Pennsylvania Superior Court, which, on September

---

[2] Rule 907 of the Pennsylvania Rules of Criminal Procedure provides the process should a PCRA court intend to dismiss a PCRA petition without a hearing.

11, 2020, entered an order that vacated the dismissal order, appointed counsel to represent Clark

on his second PCRA petition, and remanded the case to the PCRA court for further proceedings.

*See id.*; *see also* Docket, *Commonwealth v. Clark*, No. CP-51-CR-1241151-1993 (Phila. Cnty. Ct.

Com. Pl.), *available at*: https://ujsportal.pacourts.us/Report/CpDocketSheet?docketNumber=CP-

51-CR-1241151-1993&dnh=OtoLMJB7aBsvlexUTzpQyw%3D%3D ("CCP Docket").

Clark's newly appointed counsel filed an amended second PCRA petition on Clark's behalf

on February 1, 2021. *See Clark*, 2023 WL 2151613, at *1. The amended petition

> raised a substantive claim asserting that he is entitled to a new trial based upon
> newly-discovered evidence that Detectives Jastrzembski and Santiago corrupted
> Mr. Wright's criminal investigation. Re-asserting the merits of his prior
> unsuccessful claim relating to the alleged coercion of Sherry Taggart, as well as
> new claims of coercion relating to two other Commonwealth witnesses, [Clark]
> argued that [t]he prior PCRA court and appellate courts relied on the other witness
> statements but did not have any of the newly-discover[ed] evidence regarding the
> corrupt detectives when it previously rejected his claims.
>
> The documents attached to the amended petition included Mr. Wright's
> 2016 civil complaint, which was laden with various allegations of police corruption
> in cases unrelated to [Clark's] murder conviction, including averments that
> Detective Santiago invoked his Fifth Amendment right against self-incrimination
> while testifying in the criminal prosecution of Percy St. George and that Detectives
> Jastrzembski and Santiago concealed exculpating evidence in a case against Jimmy
> Dennis. While none of the new facts related directly to [Clark's] murder conviction,
> the amended petition also asserted an unspecified *Brady*[3] claim, ostensibly based
> upon the Commonwealth's supposed failure to disclose to him the detectives'
> alleged corruption in the various unrelated cases.

*Id.* at *1–2 (second alteration and footnote in original) (internal citations and quotation marks

omitted). Clark also claimed that his second PCRA petition was timely because it was based on

newly-discovered evidence. *See id.* at *2.

The PCRA court ultimately determined that Clark's second PCRA petition was untimely

and meritless, and it entered an order dismissing the petition without a hearing on October 14,

---

[3] *Brady v. Maryland*, 373 U.S. 83 (1963).

2021. *See id.*; CCP Docket. Although Clark appealed from this decision, the Superior Court affirmed the dismissal on timeliness grounds via an unpublished decision entered on February 22, 2023. *See Clark*, 2023 WL 2151613, at *3–4.

Several days after the Superior Court's decision, the clerk of court docketed Clark's first motion for relief under Rule 60(b)(6) of the Federal Rules of Civil Procedure. *See* Doc. No. 69. In this motion, Clark asserted that the court should grant him a new trial because he discovered evidence relating to the "corruption" of two detectives who were "central to the preparing and prosecution of [his] case." Pet'r's Mot. for Fed. R. Civ. P. 60(b)(6) Relief at ECF p. 9, Doc. No. 69. Clark argued that the Commonwealth failed to turn over this evidence to the defense and, as such, violated his due process rights as recognized under *Brady v. Maryland*, 373 U.S. 83 (1963) and *Giglio v. United States*, 405 U.S. 150 (1972). *See id.* at ECF pp. 10–14.

In addition to the aforementioned claims, Clark acknowledged in his motion that he had an appeal from the dismissal of his second PCRA petition still pending before the Pennsylvania Superior Court. *See id.* Since Clark appeared to have an appeal currently awaiting decision by the Superior Court, this court entered an order denying Clark's Rule 60(b)(6) motion without prejudice because he was still exhausting his state-court remedies when he filed the motion.[4] *See* Doc. No. 71.

Thereafter, Clark filed a motion for appointment of counsel and a motion for discovery, both of which this court denied without prejudice because Clark did not have any pending Rule 60(b) motion before the court at that time. *See* Doc. Nos. 72–74. Clark then filed another document on March 23, 2023, where he indicated that he had received the Superior Court's decision, which

---

[4] In the order, the court indicated that it was deferring analyzing whether Clark's Rule 60(b) motion was actually an improperly filed second or successive section 2254 habeas petition. *See* March 3, 2023 Order at 1 n.1.

was dated February 22, 2023, and expressed his belief that the Superior Court's decision was contrary to clearly established federal law. *See* Doc. No. 75.

Clark next submitted a "Motion in Request of the Court to Rescind its 03/03/23 Order," which the clerk of court docketed on March 30, 2023. *See* Doc. No. 76. In this motion, Clark appeared to request that this court vacate the March 3, 2023 order denying without prejudice his Rule 60(b)(6) motion for the failure to first exhaust his available state-court remedies because he lacked the financial means to reproduce his voluminous motion with attached exhibits.[5] *See* Mot. in Request of the Ct. to Rescind its 03/03/23 Order at 1.

A few days after the docketing of Clark's motion to rescind, the clerk of court docketed Clark's "Letter in Application." *See* Doc. No. 77. In this submission, Clark requested that this court dismiss his motion to rescind the March 3, 2023 Order because he understood his need to exhaust state remedies. *See* Ltr. in Appl. at 1. Clark also requested that the court stay and abey this case because he had filed a petition for allowance of appeal with the Pennsylvania Supreme Court. *See id.*

After reviewing Clark's motion and letter, and after reexamining Clark's Rule 60(b)(6) motion, it became apparent that Clark's Rule 60(b)(6) motion was a second or successive section 2254 habeas petition for which he did not first receive authorization from the Third Circuit before filing it here. As such, this court lacked jurisdiction to enter the March 3, 2023 Order, which denied Clark's Rule 60(b) motion without prejudice. Therefore, the court entered an order on May 23, 2023, which, *inter alia*, vacated the March 3, 2023 Order, construed Clark's Rule 60(b)(6) motion as an unauthorized second or successive section 2254 petition, and transferred the petition to the Third Circuit for consideration. *See* May 23, 2023 Order at 1–6, Doc. No. 79.

---

[5] Clark's Rule 60(b) motion, with exhibits, was 279 pages in length.

The petition was docketed with the Third Circuit at No. 23-1949, and on July 17, 2023, the Third Circuit denied Clark's application to file a second or successive habeas corpus petition because he failed to "show[] that the newly-discovered evidence that he proffers is sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found him guilty."[6] July 17, 2023 Order at 1, *In re: Ronald Clark*, No. 23-1949 (3d Cir.), Doc. No. 9 (citing 28 U.S.C. § 2244(b)(2)(B)).

The clerk of court docketed Clark's instant Rule 60(b)(6) motion on August 2, 2023. *See* Doc. No. 81. On August 23, 2023, the clerk of court docketed a motion from Clark in which he sought an order (1) directing the respondents to file an answer to his motion and (2) setting a schedule so he could obtain discovery from the respondents. *See* Doc. No. 82. Then, on September 14, 2023, the clerk of court docketed a letter from Clark in which he appears to inform Assistant District Attorney Katherine Ernst of the Office of the Philadelphia District Attorney of her obligations under *Brady* and requests that she provide him any information relating to Detectives Santiago and Jastrzembski. *See* Doc. No. 83.

## II.    DISCUSSION

### A.    <u>Clark's Claims in the Rule 60(b)(6) Motion</u>

In Clark's Rule 60(b)(6) motion, he generally claims that he is entitled to relief from this court's November 18, 2015 Order denying his habeas petition because he has identified *Brady* violations, there has been a material change of decisional law, and he can demonstrate his actual

---

[6] In Clark's instant Rule 60(b) motion, he claims to have moved to withdraw his application with the Third Circuit by submitting a motion on July 13, 2023. *See* Doc. No. 81 at ECF pp. 1, 3. Although it is unclear whether Clark believes that he succeeded in withdrawing his application, this court notes that the Third Circuit appears to have received Clark's motion on July 17, 2023, and entered it on the docket on July 18, 2023. *See In re: Ronald Clark*, No. 23-1949 (3d Cir.), Doc. No. 10. On August 7, 2023, the Third Circuit entered an order indicating that it would take no action on the request to withdraw because it had already denied his application to file a second or successive habeas petition before Clark filed his motion to withdraw. *See* Aug. 7, 2023 Order at 1, *In re: Ronald Clark*, No. 23-1949 (3d Cir.), Doc. No. 11.

innocence. *See* Mot. for Fed. R. Civ. P. Rule 60(b)(6) Relief ("Mot.") at ECF p. 6, Doc. No. 81.

With regard to the purported *Brady* violations, Clark asserts that

> [t]he Commonwealth suppressed information evidencing criminality and deliberate deceptive practices being involved in investigations conducted by Philadelphia Homicide Detectives Frank Jastrzembski and Manual Santiago. The former detectives were lead detectives in [Clark's] case, and were facing charges of perjury, suborning perjury and obstruction of justice while investigating petitioner's case, when former Detective Santiago testified at [Clark's] mistrial, and during his retrial. The record submitted is clear in establishing that[] the former detectives are directly involved in collection of **all** the evidence in [Clark's] case that: (a) resulted in his wrongful conviction and having been initially sentenced to death; and (b) his claims and evidence of innocence were based upon at the above-captioned habeas proceeding.

*Id.* at ECF p. 7. Clark goes on to allege that the respondents also "suppressed evidence of probative value to development of the factual basis of the claims and evidence" he raised as part of his habeas petition. *See id.* at ECF p. 8.

As for the evidence Clark believes was unlawfully suppressed, the court notes that Clark has attached numerous exhibits to his motion, with those exhibits covering 584 pages. *See* Doc. Nos. 81-1, 81-2. Out of those 584 pages, it appears that Clark is asserting that the government violated *Brady* only by not disclosing allegations of misconduct against Detective Santiago made by a defendant in a separate criminal case (albeit one that Clark alleges was proceeding at the same time as his case moved towards its retrial), *Commonwealth of Pennsylvania v. St. George*, No. CP-51-CR-1012571-1993. *See* Mot. at ECF p. 16, Ex. B. The defendant had alleged that Detective Santiago threatened to incarcerate a witness unless the witness signed a fabricated statement. *See* Mot. at ECF p. 16, Ex. B. In addition, in response to those allegations, Detective Santiago (through his attorney) informed the trial judge in *St. George* that if he was called to testify, he would invoke his right to remain silent under the Fifth Amendment. *See id.*

Regarding the material change in decisional law Clark is referencing, he appears to be referring to the Third Circuit's decision in *Dennis v. Secretary, Pennsylvania Department of Corrections*, 834 F.3d 263 (3d Cir. 2016). *See* Mot. at ECF p. 7 ("The claims raised herein are premised on extraordinary circumstances and equitable factors that, when paired with the material change in decisional law effectuated by <u>Dennis</u> undermines confidence in the habeas judgment rendered at the above-captioned docket."); *id.* at ECF p. 17 (indicating that this court must determine "whether [Clark] is entitled to Rule 60(b)(6) relief when pairing the evidence in it's [sic] entirety with the material change in law effectuated by <u>Dennis</u>"). However, Clark also refers to the Third Circuit's decisions in *Bracey v. Superintendent Rockview SCI*, 986 F.3d 274 (3d Cir. 2021) and *Satterfield v. District Attorney Philadelphia*, 872 F.3d 152 (3d Cir. 2017) on several occasions in his motion. *See, e.g., id.* at ECF p. 7. Overall, while it strongly appears that Clark is focusing on *Dennis*, it is nonetheless unclear whether he is also arguing that *Bracey* or *Satterfield* also qualify as a change in decisional law that would support this court granting him relief.

Concerning his actual innocence claim, it appears that Clark relies on most of the 584 pages of exhibits he attached to his motion to support this claim. Those exhibits include:

- A January 14, 2019 report authored by a criminologist, R. Paul McCauley, Ph.D., in the matter of *Shaun Thomas v. City of Philadelphia, et al.*, Civil Action No. 17-4196 (E.D. Pa.). *See id.*, Ex. A, Doc. No. 81-1. In Dr. McCauley's report, he discusses, *inter alia* (1) widespread and long-standing practices in the City of Philadelphia Police Department ("PPD") that deviated from generally accepted police practices, (2) eight other homicide cases (none of which were Clark's case) where investigatory misconduct, including misconduct associated with Detectives Santiago and Jastrzembski, was identified and documented, (3) the PPD's failure to investigate misconduct in Mr. Thomas's case, (4) the PPD's widespread interrogation tactics of using improper coercion, threats, and inducements of suspects and witnesses, and (5) the PPD's long-standing failures to reasonably direct, supervise, investigate, discipline, and correct police misconduct. *See id.* at ECF pp. 2–32.

- A letter dated October 3, 1994, from Jeffrey M. Kolansky, Esq. to the Honorable Carolyn Engel Temin of the Philadelphia County Court of Common

Pleas, now retired, in the matter of *Commonwealth v. St. George*, No. CP-51-CR-1012571-1993. *See id.*, Ex. B, Doc. No. 81-1. In this letter, written on behalf of Detective Santiago, Attorney Kolansky responds to the defendant's motion to bar his retrial based on allegations that at least one detective perjured themselves and other officers coerced witnesses to give false statements implicating the defendant in a murder.[7] *See id.* at ECF p. 34. Attorney Kolansky informs Judge Temin that even though the defendant's allegations are false, Detective Santiago would assert his Fifth Amendment right to remain silent should he be called to testify in the case, unless he was granted immunity. *See id.* at ECF p. 36.

- An August 2021 Court of Common Pleas of Philadelphia County grand jury presentment after it had

    investigate[d] the facts and circumstances surrounding the potential criminal activities of former Philadelphia Homicide Detectives Manuel Santiago and Martin Devlin as it relates to the 2016 jury trial of Anthony Wright and the former detectives' trial testimony as well as their sworn testimony taken during subsequent 2017 depositions in the civil lawsuit filed after Wright was acquitted of all charges.

    *Id.*, Ex. C at ECF p. 68, Doc. No. 81-1. Based on its investigation, the grand jury recommended that criminal charges be filed against Detectives Santiago, Devlin, and Jastrzembski. *See id.* at ECF pp. 104–05.

- The Commonwealth's answer to an amended petition for post-conviction relief filed in the matter of *Commonwealth v. Swainson*, No. CP-51-CR-431311-1988 filed in February 2020. *See id.*, Ex. D, Doc. No. 81-1. In the answer, the Commonwealth acknowledged that the petitioner was entitled to relief based on newly discovered evidence and due process violations under the United States and Pennsylvania Constitutions. *See id.* at ECF p. 109. The answer, and the stipulation of facts attached to it, contain assertions that Detective Santiago committed acts of misconduct in the case. *See, e.g., id.* at ECF pp. 112, 128–30, 144–47, 149, 156, 158.

- The Commonwealth's motion for *nolle prosequi* under Pennsylvania Rule of Criminal Procedure 585(a) filed in *Commonwealth v. Swainson* and a June 18, 2020 Order granting the motion. *See id.*, Ex. E, Doc. No. 81-1.

- The complaint filed in *Veasy v. City of Philadelphia, et al.*, Civil Action No. 20-5107 (E.D. Pa.). *See id.*, Ex. G, Doc. No. 81-2. Detectives Santiago and Jastrzembski are named as defendants and accused of misconduct in the events

---

[7] Clark also attached as part of exhibit B the defendant's motion to bar retrial and the exhibits attached thereto. *See* Mot., Ex. B at ECF pp. 38–66.

15

leading to the plaintiff's first-degree murder conviction in 1993. *See id.* at ECF pp. 2–3.

- Various documents from Clark's criminal case, including: (1) October 1993 PPD Investigation Interview Records of interviews with Kevin Pettiway, Nigel Bell, Edward Pedro, Craig Andre Cobb, Carey Bivines, Quan Ming Jin, Kyminie Al-Kaabah, Tressa Thompson, Sharon Ellison, Nicole Shaffer, Lt. Samuel Lynch, Sherry Taggart, and Tiny Wilson, *see id.* at ECF pp. 40–83, 85–108, 257–58;[8] (2) a property receipt dated October 7, 1993 for a video tape recorded from the Stop and Go Restaurant, *see id.* at ECF p. 84; (3) Detective Santiago's affidavit of probable cause and warrant to arrest Clark, *see id.* at ECF p. 109–12; (4) a portion of a transcript from November 22, 1994, where it appears that the prosecutor informs the trial judge that all discovery has been provided to the defense, *see id.* at ECF pp. 113–14

- A portion of a transcript from what appears to be a deposition of Detective Santiago on May 4, 2017 in the *Wright* civil matter. *See id.* at ECF pp. 117–18.

- An August 13, 2021 article from the Philadelphia Inquirer titled: "Former Philadelphia homicide detectives Martin Devlin, Manuel Santiago, and Frank Jastrzembski face perjury charges." *Id.* at ECF pp. 119–22.

- Portions of the complaint filed in *Wilson v. City of Philadelphia, et al.*, Civil Action No. 21-2057 (E.D. Pa.). *See id.* at ECF pp. 123–30.

- A November 17, 1999 declaration of Norma Keith. *See id.* at ECF pp. 131–33.

- An August 19, 1999 declaration of Sherry Taggart. *See id.* at ECF pp. 134–36.

- Documents appearing to relate to criminal cases against Sherry Taggart. *See id.* at ECF pp. 137–48.

- Correspondence relating to a Stop and Go Restaurant videotape and a portion of a January 12, 2000 transcript in Clark's criminal case. *See id.* at ECF pp. 149–60.

- Portions of an August 30, 1994 transcript in *Commonwealth v. St. George*. *See id.* at ECF pp. 163–75.

- Portions of what appear to be a suppression hearing transcript in Clark's criminal case. *See id.* at ECF pp. 177–226.

---

[8] Some of these names may be incorrectly spelled due to the difficulty the court encountered when attempting to read the handwritten reports.

- Portions of what Clark states is a transcript of his July 1994 mistrial. *See id.* at ECF pp. 228–54.

Using these exhibits, Clark appears to articulate his actual innocence claim as follows:[9] Detectives Santiago and Jastrzembski were the investigating detectives in his case, as well as other homicide cases, including the *St. George* matter. *See* Mot. at ECF pp. 16, 20. The PPD generally, and Detectives Santiago and Jastrzembski specifically, have been accused of numerous acts of misconduct while investigating other homicides during the same period that they were investigating Clark's case. *See id.* at ECF pp. 17–19, 24–25, 28–29, 37–40. These acts of misconduct are illustrated by, *inter alia*, (1) Dr. McCauley's January 2019 report in the *Thomas* matter, (2) the accusation against Detective Santiago in the latter part of 1994 in the *St. George* matter, for which Detective Santiago indicated he would invoke his Fifth Amendment rights if called to testify, (3) the August 2021 Court of Common Pleas of Philadelphia County grand jury presentment, (4) the Commonwealth's answer to the PCRA petition filed in the *Swainson* matter, (5) the August 23, 2021 Philadelphia Inquirer article describing perjury and other related charges filed against Detectives Santiago and Jastrzembski, (6) the complaint filed in the *Veasy* matter, (7) the portion of the complaint filed in the *Wilson* matter, (8) the portion of Detective Santiago's deposition testimony in the *Wright* matter, and (9) Sherry Taggart's declaration and documents from her criminal record. *See id.* at ECF pp. 17–19, 24–25, 28–29, 37–40, and Exs. A–E, G. Although it appears that out of all these exhibits, only Ms. Taggart's declaration directly supports that Detectives Santiago and Jastrzembski committed misconduct in Clark's case, the other evidence cited would have been admissible as habit evidence under Federal Rule of Evidence 406 and for impeachment purposes. *See id.* at ECF pp. 17, 26–27.

---

[9] None of the statements in this, and the next two, paragraphs should be interpreted as the court's adoption of Clark's assertions of fact or claims. It is merely the court's portrayal of what the court understands to be Clark's theory supporting his actual innocence claim.

The aforementioned evidence, in conjunction with Detectives Santiago and Jastrzembski's involvement in Clark's case – where either or both of them procured statements from trial witnesses, composed a photo array, obtained Clark's arrest warrant, and provided pretrial testimony – supports the claim of actual innocence in several respects. *See id.* at ECF p. 20. First, although Ms. Taggart testified at Clark's trial that she did not have a deal with the Commonwealth and was not under the influence of narcotics at the time of the homicide, this testimony is contradicted by her sworn declaration, a declaration from Norma Keith, who was Ms. Taggart's primary drug addiction counselor starting in December 1994, and portions of Ms. Taggart's criminal record attached to the motion. *See id.* at ECF pp. 21–25. Second, Detective Santiago's arrest warrant falsely indicated that Ms. Taggart was an employee of the Stop and Go Restaurant at the time of the homicide. *See id.* at ECF pp. 25, 27. Third, according to Ms. Taggart's declaration, Detective Santiago coached her when she identified Clark in a photo array. *See id.* at ECF pp. 25–26. Finally, the Commonwealth and Detective Jastrzembski continually delayed providing Clark with, and seemingly later altered, the video recording at the time of the murder which had been obtained from the Stop and Go Restaurant. *See id.* at ECF pp. 30–35.

Two additional aspects of the criminal proceedings also support Clark's actual innocence. The first is the testimony of an eyewitness, Kevin Pettiway, whose testimony was contradicted by other evidence admitted during the trial and actually supported Clark's alibi defense that he was home with his two roommates at the time of the homicide. *See id.* at ECF p. 29. The second is that Clark's trial counsel was ineffective for failing to call Nicole Shaffer, an "impartial witness," as a witness during the trial. *See id.* at ECF pp. 36–37. If Ms. Shaffer had testified in accordance with her statements to police, she would have testified that she only saw Clark's co-defendant, Kevin Dwight, with the shotgun used to commit the murder. *See id.* Moreover, Ms. Shaffer had provided

the PPD with information that would have supported culpability and motive on the part of Mr. Dwight, and not Clark. *See id.* at ECF p. 39.

**B.**     **Analysis**

Clark brings the instant motion under Rule 60(b)(6) of the Federal Rules of Civil Procedure, which provides that "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for . . . (6) any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). Rule 60(b)(6) motions have a timing requirement insofar as the movant must file it "within a reasonable time." Fed. R. Civ. P. 60(c).

Because this is a federal habeas action, the court must evaluate whether Clark's Rule 60(b)(6) motion is properly characterized as an unauthorized second or successive habeas petition.[10] The Antiterrorism and Effective Death Penalty Act ("AEDPA") mandates that before a state prisoner may file a second or successive habeas petition in which they challenge a judgment of sentence that they previously challenged in a federal habeas action, they must first obtain an order from the appropriate court of appeals authorizing the district court to consider the application. *See* 28 U.S.C. § 2244(b)(3)(A) ("Before a second or successive application permitted by this section is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application."); *see also Magwood*

---

[10] "Section 2244 . . . does not define what constitutes a 'second or successive' petition." *Benchoff v. Colleran*, 404 F.3d 812, 816 (3d Cir. 2005); *see also Christy v. Horn*, 115 F.3d 201, 208 (3d Cir. 1997) ("While the AEDPA requires [the procedure of first obtaining authorization from a court of appeals before filing a second or successive application], it does not define what is meant by 'second' or 'successive.'" (alteration to original)). Nonetheless, "'a prisoner's application is not second or successive simply because it follows an earlier federal petition.'" *Benchoff*, 404 F.3d at 817 (quoting *In re Cain*, 137 F.3d 234, 235 (5th Cir. 1998)); *see also Stewart v. Martinez-Villareal*, 523 U.S. 637, 643 (1998) ("This may have been the second time that respondent had asked the federal courts to provide relief on his *Ford* claim, but this does not mean that there were two separate applications, the second of which was necessarily subject to § 2244(b)."). If, however, "a prisoner has filed a previous habeas petition that was adjudicated on the merits, he may not file a second or successive petition in the district courts without first seeking leave from the Court of Appeals." *In re Stitt*, 598 F. App'x 810, 811 n.1 (3d Cir. 2015). In addition, the second or successive "doctrine . . . bar[s] claims that **could have been raised** in an earlier habeas corpus petition" but were not raised by the petitioner. *Benchoff*, 404 F.3d at 817 (emphasis added) (citations omitted).

*v. Patterson*, 561 U.S. 320, 330–31 (2010) ("If an application [for a writ of habeas corpus] is 'second or successive,' the petitioner must obtain leave from the court of appeals before filing it with the district court."); *United States v. Winkelman*, 746 F.3d 134, 135 (3d Cir. 2014) (interpreting motion to recall mandate and reinstate direct appeals as successive habeas motion); *In re Pendleton*, 732 F.3d 280, 282 (3d Cir. 2013) (per curiam) (addressing requests for authorization to file successive habeas petition to raise claims under *Miller v. Alabama*, 567 U.S. 460 (2012)). Importantly, AEDPA's allocation of "gatekeeping" responsibilities to the courts of appeals have divested district courts of jurisdiction over habeas applications that are second or successive. *See Burton v. Stewart*, 549 U.S. 147, 157 (2007) ("The long and short of it is that [the petitioner] neither sought nor received authorization from the Court of Appeals before filing his . . . 'second or successive' petition challenging his custody, and so the District Court was without jurisdiction to entertain it."). A habeas petitioner cannot avoid AEDPA's second or successive gatekeeping mechanism by raising habeas claims in a filing that they designate as a Rule 60(b) motion. *See Sutton v. Commonwealth*, Civ. A. No. 17-109 Erie, 2018 WL 4599825, at *2 (W.D. Pa. Sept. 25, 2018) (explaining that "the Petitioner could not avoid AEDPA's second or successive gatekeeping mechanism[,] by simply designating a filing as a Rule 60(b) motion" (internal quotation marks and citations omitted)); Brian R. Means, FEDERAL HABEAS MANUAL § 11:42, Westlaw (database updated May 2019) (explaining that "a [habeas] petitioner is not permitted to circumvent AEDPA's second or successive petition requirements simply by labeling the petition or motion as something other than what it is").

In analyzing whether a Rule 60(b)(6) motion is actually a second or successive habeas petition, the court focuses on the framework established in *Gonzalez v. Crosby*, 545 U.S. 524 (2005). In *Gonzalez*, the United States Supreme Court addressed the circumstances in which the

use of Rule 60(b) is "inconsistent with" AEDPA's second or successive petition requirements and, consequently, unavailable to a state prisoner seeking habeas relief.[11] *See* 545 U.S. at 526 (addressing "whether, in a [section 2254] habeas case, such motions are subject to the additional restrictions that apply to 'second or successive' habeas corpus petitions under [AEDPA] . . . ."). The Court explained that courts must construe a Rule 60(b) motion as a "second or successive habeas corpus application" when it advances "one or more 'claims.'" *Id.* at 531–32 (quoting 28 U.S.C. § 2244(b)(1), (2)). The Court observed that "[i]n most cases, determining whether a Rule 60(b) motion advances one or more 'claims' will be relatively simple. A motion that seeks to add a new ground for relief . . . will of course qualify." *Id.* at 532. In addition, the Court instructed that a petitioner is advancing a habeas claim in a Rule 60(b) motion if they "attack[] the federal court's previous resolution of a claim on the merits, since alleging that the court erred in denying habeas relief on the merits is effectively indistinguishable from alleging that the movant is, under the substantive provisions of the statutes, entitled to habeas relief." *Id.* (footnote omitted). Similarly, a motion seeking to present newly discovered evidence in support of a claim that the court previously denied represents a habeas claim. *See id.* In contrast, a motion is a "true" Rule 60(b) motion if it challenges a procedural ruling made by the district court that precluded a merits determination of the habeas petition, such as a "failure to exhaust, procedural default, or statute-of-limitations bar"), or "challenges a defect in the integrity of the federal habeas proceedings," such as an assertion that the opposing party committed fraud upon the court. *Id.* at 532 & nn.4, 5.

Here, although Clark claims to have "cured the defects in [his first] Rule 60(b)(6) Motion," Mot. at ECF p. 1, presumably a reference to his belief that his new motion no longer constituted a

---

[11] Rule 60(b), like the rest of the Rules of Civil Procedure, applies in habeas corpus proceedings under 28 U.S.C. § 2254 only 'to the extent that [it is] not inconsistent with' applicable federal statutory provisions and rules.'" *Gonzalez*, 545 U.S. at 529 (footnote omitted; alteration in original) (quoting now-Rule 12 of the Rules Governing Section 2254 Cases).

second or successive habeas petition, he has not changed the tenor of this motion because he has once again attempted to seek habeas relief through a Rule 60(b)(6) motion. Clark also appears to misunderstand the differences between a true Rule 60(b)(6) motion and an unauthorized second or successive habeas petition.

In this regard, Clark ignores the fact that this court denied his habeas petition, in its entirety, **on the merits**. *See* R. & R. at 105 ("We considered the merits of each of the claims raised by Clark in this petition."). Among those claims that this court rejected, albeit in the context of addressing whether trial counsel was ineffective, were several of the same claims Clark is attempting to relitigate here as part of his purported showing of actual innocence, such as: (1) discrepancies in Mr. Pettiway's testimony, *see id.* at 16–18; (2) the failure to call Ms. Shaffer as a witness at trial, *see id.* at 19–21; (3) issues with Ms. Taggart's testimony and credibility, including whether she was under the influence at the time of the murder and whether she received a deal in exchange for testifying falsely at Clark's trial, *see id.* at 21–46; (4) the Commonwealth's conduct regarding the video tape from the Stop and Go Restaurant, *see id.* at 62–68; and (5) alleged deficiencies with the photo array, *see id.* at 78–84. Any challenges to this court's merits determinations of those claims are challenges seeking habeas relief and, as such, are not proper grounds for seeking relief under Rule 60(b)(6). *See Gonzalez*, 545 U.S. at 532 (explaining that petitioner advances habeas claims in Rule 60(b) motion if they "attack[] the federal court's previous resolution of a claim on the merits, since alleging that the court erred in denying habeas relief on the merits is effectively indistinguishable from alleging that the movant is, under the substantive provisions of the statutes, entitled to habeas relief"). Therefore, Clark's attempt to relitigate prior habeas claims supports this court construing his Rule 60(b)(6) motion as an unauthorized second or successive habeas petition.

Clark's *Brady* claim also supports this court construing his Rule 60(b)(6) motion as an unauthorized second or successive habeas petition. While Clark argues that his *Brady* claim affects both the integrity of his underlying criminal proceedings and his habeas proceedings, *see, e.g.*, Mot. at ECF p. 8 ("Petitioner further contends and demonstrates herein that, at all times during his habeas proceeding the Commonwealth suppressed evidence of probative value to development of the factual basis of the claims and evidence of innocence raised by petitioner."), he is mistaken.[12] In his habeas petition, Clark did not assert a *Brady* claim based on the Commonwealth's alleged failure to turn over the information about Detective Santiago in the *St. George* matter, only to have this court decline to address it because of a procedural deficiency. If the court had done so, Clark could properly seek Rule 60(b)(6) relief by attempting to show that a change in decisional law warrants the court considering the *Brady* claim on the merits. But that is just not the case here. Instead, Clark is improperly raising his identical *Brady* claim for a second time, even though this court determined that his first attempt via a Rule 60(b)(6) motion was actually an unauthorized second or successive habeas petition, and treated it as such by transferring it to the Third Circuit. *See* May 23, 2023 Order at 2 & n.3.

The final aspect of the instant motion supporting a conclusion that Clark's Rule 60(b)(6) motion is actually a second or successive habeas petition is his assertion that he can demonstrate his actual innocence. The court recognizes that a "change in [decisional] law, paired with a petitioner's adequate showing of actual innocence, would . . . be sufficient to support Rule 60(b)(6) relief." *Satterfield v. District Attorney Philadelphia*, 872 F.3d 152, 163 (3d Cir. 2017); *see also McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013) ("[A]ctual innocence, if proved, serves as a

---

[12] In general, if there was an actual *Brady* violation, it would theoretically affect all post-trial proceedings that occurred until that point because a habeas petitioner's due process rights were violated, and the petitioner's conviction would need to be vacated. Nevertheless, it does not affect the integrity of these habeas proceedings where no such *Brady* claim was previously raised.

gateway through which a petitioner may pass whether the impediment is a procedural bar . . . or . . . expiration of the [AEDPA] statute of limitations."). In certain limited circumstances then, Clark could invoke actual innocence to excuse a procedural defect with his original habeas petition. Here, there is no procedural defect for Clark to attempt to excuse because the court reviewed and denied all his habeas claims on the merits. Should Clark believe he can make the requisite showing of actual innocence, he must do so by seeking authorization from the Third Circuit to file a second or successive habeas petition.[13]

For the reasons set forth above, the court concludes that Clark's Rule 60(b)(6) motion is a second or successive habeas petition for which he failed to first receive authorization from the Third Circuit before filing it here. Therefore, this court lacks subject-matter jurisdiction to consider it. *See* 28 U.S.C. § 2244(b)(3)(A); *Robinson v. Johnson*, 313 F.3d 128, 139–40 (3d Cir. 2002) (explaining that section 2244 "limits the authority of the district court to consider second or successive petitions without an order of the court of appeals").

If "a second or successive habeas petition is erroneously filed in a district court without the permission of a court of appeals, the district court's only option[s are] to dismiss the petition or transfer it to the court of appeals pursuant to 28 U.S.C. § 1631." *Robinson*, 313 F.3d at 139; *see* 28 U.S.C. § 1631 ("Whenever a civil action is filed in a court . . . and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action . . . to any other such court in which the action . . . could have been brought at the time it was filed."). When determining whether to transfer a habeas action to the court of appeals, the district court should "consider whether the petitioner alleges sufficient facts to satisfy the gatekeeping

---

[13] "To qualify for this exception, the petitioner must present new, reliable evidence showing it is more likely than not that no reasonable juror would have voted to convict him." *Reeves v. Fayette SCI*, 897 F.3d 154, 157 (3d Cir. 2018) (citing *Schlup v. Delo*, 513 U.S. 298, 324 (1995)).

requirement of the relevant habeas provision." *Lee v. Lane*, No. 1:15-CV-2195, 2017 WL 3167410, at *3 (M.D. Pa. June 23, 2017) (citations omitted); *see Hatches v. Schultz*, 381 F. App'x 134, 137 (3d Cir. 2010) (per curiam) ("In deciding that it would not be in the interest of justice to transfer the petition to the Fourth Circuit, the District Court properly considered whether Hatches had alleged facts sufficient to bring his petition within the gatekeeping requirement of § 2255 permitting 'second or successive' petitions based upon newly discovered evidence or a new rule of constitutional law." (citation omitted)).

The relevant habeas petition in this case is 28 U.S.C. § 2244(b)(2), which provides as follows:

> (A) the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
> (B)(i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and
>
> (ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2244(b)(2). Here, as Clark has not identified his Rule 60(b)(6) motion as a second or successive petition, he understandably does not attempt to explain how it could qualify as a proper second or successive petition under 28 U.S.C. § 2244(b)(2). Nevertheless, the court notes that none of his claims involve a "new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." *Id.* § 2244(b)(2)(A). He has alleged, however, that "the factual predicate for the claim[s] could not have been discovered previously through the exercise of due diligence." *Id.* § 2244(b)(2)(B)(i). He also asserts that he can demonstrate his actual innocence. *Id.* § 2244(b)(2)(B)(ii).

While this court expresses no opinion about the merits of Clark's claims, *see Hatches*, 381 F. App'x at 137 ("[T]his inquiry as to the factual predicate of Hatches' claims did not require—and the District Court did not express—any opinion on the merits of the claims."), the court finds that the interests of justice do not warrant transferring this matter to the Third Circuit despite Clark's submission potentially qualifying under section 2244(b)(2)(B). The Third Circuit has already denied his request to file a second or successive petition based on the same claims he is asserting here. Thus, there is no reason for the court to again transfer Clark's motion to the Third Circuit. Accordingly, the court dismisses this matter without prejudice for lack of subject-matter jurisdiction.

## III.   CONCLUSION

For the reasons discussed above, the court construes Clark's Rule 60(b)(6) motion as a second or successive habeas petition.[14] Since Clark did not receive authorization from the Third

---

[14] Even if the court would have concluded that Clark's Rule 60(b)(6) was a "true" Rule 60(b) motion, he failed to state grounds for relief. Under Rule 60(b)(6), this court "may only grant relief under [this] Rule . . . in 'extraordinary circumstances where, without such relief, an extreme and unexpected hardship would occur.'" *Satterfield*, 872 F.3d at 158 (quoting *Cox v. Horn*, 757 F.3d 113, 120 (3d Cir. 2014)). "This is a difficult standard to meet, and '[s]uch circumstances will rarely occur in the habeas context.'" *Id.* (alteration in original) (quoting *Gonzalez*, 545 U.S. at 535).

When faced with Rule 60(b)(6) motions in which the movant is seeking relief based on an alleged intervening change in the law, the district court

> must address three issues: First, [the court] ask[s] whether the asserted change is material to the basis on which the district court initially denied habeas relief. *See Norris v. Brooks*, 794 F.3d 401, 404–05 (3d Cir. 2015). If it is, [the court] then evaluate[s] whether the district court analyzed the petitioner's Rule 60(b) motion in accordance with a multifactor analysis we outlined in *Cox*, which includes, among other things, a consideration of the effect of the change in decisional law and an assessment of "the merits of [the] petitioner's underlying . . . claim." 757 F.3d at 124. Finally, we determine the proper disposition on appeal: If the District Court undertook the requisite multifactor analysis, we review the merits of its ruling for abuse of discretion, *id.* at 118, but if it did not engage in that analysis or "we cannot determine from what it wrote whether the Court considered [the relevant] factors," *id.* at 120, then the District Court per se abused its discretion and we ordinarily remand, because "[t]he grant or denial of a Rule 60(b)(6) motion is an equitable matter left, in the first instance, to the discretion of a district court," *id.* at 124.

*Bracey v. Superintendent Rockview SCI*, 986 F.3d 274, 284 (3d Cir. 2021).

Here, Clark's motion fails at the first level of the aforementioned procedure because of his mistaken reliance on *Dennis* as a material change in decisional law that would support him seeking relief under Rule 60(b)(6). In *Dennis*, the Third Circuit "rejected" the Commonwealth's argument "that a defendant's failure to seek out exculpatory materials in the public domain barred him from bringing a *Brady* claim." *Id.* at 280 (citing *Dennis*, 834 F.3d at 289).

Circuit to file it here, this court lacks subject-matter jurisdiction to consider it. Accordingly, the

court will dismiss it for lack of subject-matter jurisdiction. The court also declines to issue a

certificate of appealability.[15]

The court will enter a separate order.[16]

BY THE COURT:



/s/ *Edward G. Smith*
EDWARD G. SMITH, J.

---

Instead, the Third Circuit concluded that (1) "a defendant has no burden to 'scavenge for hints of undisclosed *Brady* material' even if the material part could be found in public records.'" and (2) "the prosecution's 'duty to disclose under Brady is absolute—it does not depend on defense counsel's actions'—and the defense is 'entitled to presume that prosecutors have "discharged their official duties."'" *Id.* (quoting *Dennis*, 834 F.3d at 290).

    Here, as already stated, Clark did not raise a *Brady* claim in his habeas petition similar to the one he is raising in the instant motion only to have the court deny the *Brady* claim because of a procedural defect. Thus, Clark's case is dissimilar to the habeas petitioner in *Bracey*, who **had** filed a habeas petition raising a *Brady* claim approximately 16 years after his conviction for murder, only to have the district court dismiss the petition on statute of limitations grounds (and have a motion for a certificate of appealability denied by the Third Circuit "in view of the then-existing case law"), after finding that the petitioner failed to exercise the due diligence required under 28 U.S.C. § 2244(d)(1)(D). *See id.*; *see also Jones v. Vaughn*, No. 99-cv-4718, 2022 WL 131257, at *3 (E.D. Pa. Jan. 14, 2022) ("*Bracey* specifically involved the timeliness of claims brought under *Brady*[.]"). In those circumstances, *Dennis* was "material to the basis on which the district court initially denied habeas relief," *id.* at 284, and, as such, supported the petitioner seeking reconsideration of the dismissal of his *Brady* claim on limitations grounds via Rule 60(b)(6). *See Bracey*, 986 F.3d at 285 ("*Dennis* . . . caused a material change in the relevant law, making Bracey's Rule 60(b) motion worthy of consideration.").

[15] A court should only issue a certificate of appealability ("COA") if "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "Where a district court has rejected the constitutional claims on the merits . . . [t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). If, however, the district court

      denies a habeas petition on procedural grounds without reaching the prisoner's underlying
      constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason
      would find it debatable whether the petition states a valid claim of the denial of a constitutional right
      and that jurists of reason would find it debatable whether the district court was correct in its
      procedural ruling.

*Id.* Here, Clark has neither made "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), nor demonstrated that reasonable jurists "would find it debatable whether [this court] was correct" in concluding that his Rule 60(b)(6) is an authorized second or successive habeas petition. *Id.*

[16] Despite the ultimate outcome here, Clark's exhibits referencing Detectives Santiago and Jastrzembski's alleged misconduct in other homicide cases during the same period that they were investigating the murder of Mr. Sunn Life are certainly troubling, to say the least. According to the Philadelphia Inquirer article attached to Clark's motion, the work of Philadelphia District Attorney's Conviction Integrity Unit has led to overturning at least four cases involving these detectives and Detective Martin Devlin, who was also indicted. *See* Mot., Ex. G at ECF p. 119.